No. 25-647

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

HO CHAN KIM,
Petitioner - Appellant,

v.

GOOGLE LLC,
Respondent - Appellee.

_____

On Appeal from the
United States District Court
for the Northern District of California

_____

**APPELLANT'S OPENING BRIEF**

_____

Carlos M. Taitano
Taitano & Taitano LLP
P.O. Box 326204
Hagatna, Guam 96932
Telephone: (671) 777-0581
Email: cmakototaitano@taitano.us.com

*Attorney for Petitioner - Appellant, Ho Chan Kim*

# TABLE OF CONTENTS

Page

I.    STATEMENT OF JURISDICTION……………….…………………..1

II.   STATEMENT OF ISSUES…………………………………………….2

III.  STATUTORY AUTHORITIES……………………………….…………3

IV.  STATEMENT OF THE CASE…………………….…………………..4

V.   SUMMARY OF THE ARGUMENT…………………………………8

VI.  ARGUMENT……………………………………………………....…….9

    A.    The *Highfields* balancing test should not have been applied because Doe has no First Amendment rights, and under the *Zuru* or *Takada* standards, Kim has made a sufficient showing to grant Kim's discovery request and to deny Google's motion to quash…………………….9

        1.  The *Highfields* balancing test should not have been applied because Doe has no First Amendment rights……………11

        2.  Google's motion to quash should be denied because, under the standards articulated in *Zuru* or *Takada*, Kim has made a sufficient showing…………………………....…18

    B.    The District Court abused its discretion by determining that Kim did not satisfy the *Highfields* test…………………………19

        1.  Kim satisfied the first component of the *Highfields* test………………………………………………………....21

            (a) The YouTube Video is an unlawful act……………………22

            (b) Doe's unlawful act was done intentionally………………..24

            (c) Kim has suffered an injury………………………………..24

i

(d) There is causation between the YouTube
Video and the injuries suffered by Kim…………………...27

2. Kim satisfied the second component of the
*Highfields* test…………………………………………………28

3. The District Court abused its discretion by
determining that Kim failed to meet both
components of the *Highfields* test………………………...29

(a) The YouTube Video identifies Kim………………………30

(b) The harm suffered by Kim is a direct
result of the YouTube Video………………………………31

(c) Kim's Korea counsel did not offer
conclusory statements ……………………………………32

(d) The magnitude of harms weighs in favor
of Kim…………………………………………………...33

C. The District Court abused its discretion by
determining that the Third *Intel* factor favors
quashing the subpoena……………………………………………33

VII. CONCLUSION………..………………………………………...34

CERTIFICATE OF COMPLIANCE FOR BRIEFS…………………………...35

# TABLE OF AUTHORITIES

Pages

**Cases**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013)……………………………………….....…………..11

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
  591 U.S. 430 (2020)………………………………………………....11,16,17

*Am.-Arab Anti-Discrimination Comm. v. Reno*,
  70 F.3d 1045 (9th Cir.1995)…………………………...…………………11

*Art of Living Found. v. Does 1-10*,
  No. 10-cv-05022-LHK,
  2011 WL 5444622 (N.D. Cal. Nov. 9, 2011)……………………………...12

*CPC Patent Technologies Pty Ltd. v. Apple Inc.*,
  34 F.4th 801 (9th Cir. 2022)……………………………………….……1

*DeMartini v. DeMartini*,
  833 Fed. Appx. 128 (9th Cir. 2020)…………………………………...23,29

*DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*,
  887 F.2d 275 (D.C. Cir. 1989)…………………………………………16

*Drummond Co. v. Collingsworth*,
  Case No. 13-mc-80169-JST (JCS),
  Case No. 13-mc-80171-JST (JCS),
  2013 WL 6074157 (N.D. Cal. Nov. 18, 2013)…………………………....17

*Flynn v. Love*,
  3:19-CV-00239-MMD-CLB,
  2023 WL 2561158 (D. Nevada Mar. 16, 2023)………………………..14

*Free Speech Coalition, Inc. v. Paxton*,
  95 F.4th 263 (5th Cir. 2024)……………………………………………15

Pages

**Cases (continued)**

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)…………………………………………………...26

*hey, inc. v. Twitter, Inc.*,
  Case No. 22-mc-80034-DMR,
  2023 WL 3874022 (N.D. Cal. June 6, 2023)………………...……….12,13,19,33

*Highfields Capital Mgmt., L.P. v. Doe*,
  385 F. Supp. 2d 969 (N.D. Cal. 2005)……………...…………………..*passim*

*In re Anonymous Online Speakers*,
  661 F.3d 1168 (9th Cir. 2011)…………………………………...………...19

*In re Gliner*,
  --- F.4th ---, 2025 WL 968393 (9th Cir. Apr. 1, 2025)………………………..9,10

*In re Rule 45 Subpoenas Issued to Google LLC
  and LinkedIn Corp. dated July 23, 2020*,
  337 F.R.D. 639 (N.D. Cal. 2020)…………………………………..11,12,15

*In re Takada*,
  Case No. 22-mc-80221-VKD,
  2023 WL 1442844 (N.D. Cal. Feb. 1, 2023)………………………....8,12,13,18,19

*In re Team Co.*,
  Case No. 22-mc-80183-VKD,
  2023 WL 1442886 (N.D. Cal. Feb. 1, 2023)……………………….…...12-13,19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)……………………………………………2,8,9,10,33,34

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019)……………………………………………...19

Pages

**Cases (continued)**

*Rocci v. Ecole Secondaire Macdonald-Cartier*,
  755 A.2d 583 (N.J. 2000)……………………………………………..26,29

*Silverman v. Mendiburu*,
  785 F. App'x 460 (9th Cir. 2019)…………………………….…..…21,28,30,32

*Smallwood v. NCsoft Corp.*,
  730 F. Supp. 2d 1213 (D. Haw. 2010)…………………………...………….14

*Takagi v. Twitter, Inc.*,
  Case No. 22-mc-80240-VKD,
  2023 WL 1442893 (N.D. Cal. Feb. 1, 2023)………………………….12,18-19

*TikTok Inc. v. Garland*,
  604 U.S. ---, 145 S. Ct. 57, 220 L. Ed. 2d 319 (2025)…………………...…16,17

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*,
  Case No. 21-mc-80102-DMR,
  2021 WL 4124216 (N.D. Cal. Sept. 9, 2021)…………………….....…10,20,28

*Unite States v. Sealed 1, Letter of Request for Legal Assistance
  from the Deputy Prosecutor Gen. of the Russian Fed'n*,
  235 F.3d 1200 (9th Cir. 2000)……………………………….…..……………....1

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990)………………………...17

*United States v. Wunsch*, 84 F.3d 1110 (9th Cir. 1996)……………………………11

*Walker v. Pacific Maritime Assoc.*,
  Case No. C07-3100 BZ,
  2008 WL 1734757 (N.D. Cal. Apr. 14, 2008)…………………………………14

*Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton*,
  536 U.S. 150 (2002)…………………………………………………………11

Pages

**Cases (continued)**

*Wirt v. Twitter, Inc.*,
 Case No. 21-mc-80166-JSC,
 2021 WL 5919846 (N.D. Cal. Dec. 15, 2021)…………………….…21,28,30,32

*W.J.A. v. D.A.*,
 43 A.3d 1148 (N.J. 2012)……………………………………...……..26,29

*Zuru, Inc. v. Glassdoor, Inc.*,
 614 F. Supp. 3d 697 (N.D. Cal. 2022)………………...…….8,11,12,13,18,19,34


**Statutes**

28 U.S.C. § 636(b)(1)(A)………………………………………...…1

28 U.S.C. § 636(c)………………………………………………1

28 U.S.C. § 1291……………………………………………...…1

28 U.S.C. § 1331……………………………………………...…1

28 U.S.C. § 1782……………………………………….…….....………*passim*

28 U.S.C. § 2107……………………………………………….…...1


**Rules**

Fed. R. App. P. 4…………………………………………….....1

Fed. R. Civ. P. 11…………………………………………………14

Pages

**Foreign Laws**

Civil Act of the Republic of Korea, Art. 750…………………...…..…21,22,27,28

Civil Act of the Republic of Korea, Art. 751………………….c……..21,22,24,27,28

**Treatises**

1 Rodney A. Smolla, *Law of Defamation* § 7:7 (2d ed. 2021)……………………26

# I. STATEMENT OF JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 over the application pursuant to 28 U.S.C. § 1782 of Appellant Ho Chan Kim (hereinafter "**Kim**"). ER-158-173.

This Court has appellate jurisdiction over the December 31, 2024 Judgment and Order Granting Google's Motion to Quash Subpoena; and Denying Doe's Motion to Quash Subpoena (hereinafter "**Order**") under 28 U.S.C. § 1291 because "orders made pursuant to § 1782 are final, and thus appealable under 28 U.S.C. § 1291". *United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*, 235 F.3d 1200, 1203 (9th Cir. 2000); ER-2-11. The parties consented to magistrate judge jurisdiction, and therefore, the magistrate judge had authority to issue the Judgment and the Order, a dispositive decision that granted Google LLC's motion to quash, which disposed of the case in the district court. 28 U.S.C. § 636(b)(1)(A), (c); *CPC Patent Tech. Pty Ltd. v. Apple Inc.*, 34 F.4th 801, 808 (9th Cir. 2022) (holding that Section 1782 applications for discovery are dispositive within the meaning of 28 U.S.C. § 636(b)(1)); ER-69-72.

This appeal was timely filed pursuant to Rule 4 of the Federal Rules of Appellate Procedure because Kim timely filed his notice of appeal on January 29, 2025, twenty-nine days after the Order was issued and the Judgment was entered. 28 U.S.C. § 2107; Fed. R. App. P. 4; ER-2-11; ER-174-77.

## II. STATEMENT OF ISSUES

**Issue No. 1:** Whether the foreign speech of Doe, who is likely not a U.S. citizen, is protected by the First Amendment of the Constitution of the United States where Doe entered the United States after publishing his foreign speech and might have been present in the United States during the pendency of the case in the District Court.

**Issue No. 2:** Whether the District Court abused its discretion by determining that Kim did not satisfy the "real evidentiary basis" standard articulated in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005).

**Issue No. 3:** Whether the District Court abused its discretion by determining that the third factor articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) favors denying the requested discovery.

# III. STATUTORY AUTHORITIES

## First Amendment of the Constitution of the United States

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

## 28 U.S. Code § 1782 - Assistance to foreign and international tribunals and to litigants before such tribunals

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

3

## IV. STATEMENT OF THE CASE

Kim is a Korean national who resides in the Republic of Korea, and is a pastor in the Republic of Korea at Life Word Mission, which is a South Korean Christian religious mission. ER-110, ER-149. Kim has been living and dedicating his life to his faith. ER-111. Kim has built up his reputation as a pastor over many years, and is well reputed within the community. ER-105-07, ER-112.

On January 3, 2024, an anonymous individual, John Doe (hereinafter "**Doe**"), published an insulting, false, and defamatory YouTube video concerning Kim (hereinafter "**YouTube Video**"). ER-110-111, ER-113, ER-150-52, ER-126-35. The YouTube Video was published in the Republic of Korea in the Korean language. ER-116, ER-126, ER-128-32, ER-150. In addition to insulting Kim, the YouTube Video falsely accuses Kim of sexually assaulting a sister within his church, drinking alcohol which is a sin under the teachings of Life Word Mission, and committing a secret fraud. ER-151, ER-133-35.

When Kim first learned about the YouTube Video, Kim was shocked at the extremely hateful speech that was being directed toward him and that he was being falsely accused of sexually assaulting a sister, committing the sin of drinking alcohol, and committing fraud. ER-111. Since learning of the YouTube Video, Kim has been under immense stress, and because of the stress, Kim has been suffering from insomnia for months and was diagnosed with depression caused by the YouTube

4

Video. *Id.*, ER-151. Kim has been unable to go to crowded places because he feels humiliated and fearful that people may know about the YouTube Video. ER-111. Kim feels as though others are blaming him of the despicable acts that he is being accused of committing. *Id.* Whenever Kim delivers sermons and sees believers watching their smartphones, he gets flashbacks of the YouTube Video, which causes him to be in fear that the believers are watching the YouTube Video. *Id.* Kim has learned that many believers are losing their faith because of the accusations against him contained in the YouTube Video, which has devastated Kim both mentally and emotionally. *Id.*

Numerous Life Word Mission believers have also viewed the YouTube Video, have identified the YouTube Video to concern Kim, and have expressed concern about Kim and what is being stated within the YouTube Video, which has significantly harmed Kim's good name within the community. ER-106-07. Kim is considering quitting his job as a pastor because of the fear, stress, humiliation, and harm that the YouTube Video is causing to both him and to other believers, and is only persevering with prayers and with the help of his faith. ER-111. If Kim is unable to clear his reputation through his civil lawsuit in Korea, Kim fears that he will need to quit his job as a pastor. ER-112. Kim has felt helpless for months, unable to do anything to clear his reputation, while Doe hides behind his anonymity avoiding any accountability for his insults and falsehoods. *Id.*

Kim has filed a civil lawsuit against Doe in the Suwon District Court, Anyang Branch Court, in the Republic of Korea, Civil Case Number 2024Gaso117176, for defamation and insulting (hereinafter "**Civil Case**"). ER-152. However, Kim has been unable to determine the true identity of Doe, preventing him from proceeding with the Civil Case. *Id.*

Kim is unable to identify Doe because Korean courts lack jurisdiction over Google LLC (hereinafter "**Google**"), which is head quartered in Mountain View, California. ER-138-39.

Kim filed his *Ex Parte* Application For Order Pursuant To 28 U.S.C. § 1782 Authorizing Discovery For Use In Foreign Proceedings And Supporting Memorandum (hereinafter "**Application**") to obtain personal identifying information (hereinafter "**PII**") of Doe so that he can identify Doe in order to pursue the Civil Case. ER-139.

The District Court issued its July 2, 2024 Order Granting in Part and Denying in Part Ex Parte Application for Order Permitting Discovery for Use in a Foreign Proceeding in which the District Court granted the Application and authorized the issuance of the subpoena. ER-118-24. Kim subsequently served the subpoena and that order upon Google. ER-116.

Google filed its motion to quash on September 9, 2024, Kim filed his opposition on September 23, 2024, and Google filed its reply on September 30, 2024.

6

On October 11, 2024, District Judge Edward J. Davila issued his order referring the case to Magistrate Judge Nathanael Cousins, and the case was referred to Magistrate Judge Cousins on October 17, 2024. ER-183.

On November 6, 2024, Kim and Google filed their consent to magistrate judge jurisdiction. ER-70, ER-72.

On October 23, 2024, the District Court issued its <u>Order Setting Evidentiary Hearing and Requesting Parties to File Magistrate Judge Consent/Decline Form</u>, in which the District Court ordered Google to provide the order to Doe so that Doe may participate or testify at the evidentiary hearing. ER-74.

On November 12, 2024, Doe filed his motion to quash the subpoena, almost three months after the deadline to file a motion to quash had passed.

On November 20, 2024, an evidentiary hearing was held before Magistrate Judge Cousins on Google's motion to quash. ER-13-39. Despite being given an opportunity to testify, Doe did not attend the evidentiary hearing. ER-13.

On December 31, 2024, the District Court filed its December 31, 2024 Judgment and Order. ER-3, ER-5-11.

On January 29, 2025, Kim filed his Notice of Appeal to the Ninth Circuit Court of Appeals. ER-175-77.

## V. SUMMARY OF THE ARGUMENT

Non-citizen Doe's foreign speech is not protected by the First Amendment of the Constitution of the United States, although Doe purportedly entered the United States after he published the foreign speech, and might have been present in the United States during the pendency of this case in the District Court. Because the First Amendment does not protect Doe's foreign speech, the *Highfields* balancing test does not apply, and under *Zuru* or *Takada*, Kim has made a sufficient showing for this Court to grant the requested discovery and deny Google's motion to quash.

Even if the First Amendment might protect Doe's foreign speech, Doe has satisfied the *Highfields* test by making out a prima facie case with competent evidence, and the magnitude of harms weigh in favor of Kim.

The third *Intel* factor favors granting the requested discovery and denying Google's motion to quash, because if the First Amendment does not protect Doe's speech, then Kim is not attempting to circumvent the policies of the United States. If Doe might have First Amendment rights for his foreign speech at issue, the third *Intel* factor favors granting discovery and denying Google's motion to quash because Kim has made out a prima facie case with competent evidence.

## VI. ARGUMENT

**A.** **The *Highfields* balancing test should not have been applied because Doe has no First Amendment rights, and under the *Zuru* or *Takada* standards, Kim has made a sufficient showing to grant Kim's discovery request and to deny Google's motion to quash.**

Congress enacted Section 1782 of Title 28 of the United States Code to provide "efficient assistance to participants in international litigation" and to encourage "foreign countries by example to provide similar assistance to [U.S.] courts." *In re Gliner*, --- F.4th ---, 2025 WL 968393, at *3 (9th Cir. Apr. 1, 2025) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004).

Under Section 1782, a district court may order discovery in the United States for use in a foreign legal proceeding if the following three requirements are satisfied: (1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal that is within reasonable contemplation; and (3) the applicant is an interested person in that foreign proceeding. 28 U.S.C. §1782(a); *In re Gliner*, 2025 WL 968393, at *3 (citing *Intel Corp.*, 542 U.S. 241, 259).

Even where all three statutory requirements are met, district courts still retain discretion to decide whether to grant discovery under Section 1782. *In re Gliner*, 2025 WL 968393, at *3 (citing *Intel Corp.*, 542 U.S. at 264). In exercising that

9

discretion, district courts are guided by the four non-exhaustive factors that the Supreme Court articulated in *Intel*: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request is "unduly intrusive or burdensome." *In re Gliner*, 2025 WL 968393, at *3 (citing *Intel Corp.*, 542 U.S. at 264-65).

Kim has satisfied the three statutory requirements under Section 1782, as well as the first two *Intel* factors.

Where anonymous speech protected by the First Amendment is implicated, district courts in this Circuit have analyzed the Section 1782 request under the fourth *Intel* factor – whether the request is unduly intrusive or burdensome, and where commercial speech is involved, district courts have applied the *Highfields* test. *Tokyo University of Social Welfare v. Twitter, Inc.*, Case No. 21-mc-80102-DMR, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021); *Highfields Capital Mgmt., L.P.*, 385 F. Supp. 2d at 975-76.

//

### 1. The *Highfields* balancing test should not have been applied because Doe has no First Amendment rights.

Constitutional questions are reviewed de novo. *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996). A district court's determinations on questions of law and on mixed questions of law and fact that implicate constitutional rights are reviewed de novo. *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1066 (9th Cir.1995).

The First Amendment of the United States Constitution protects the rights of individuals to speak anonymously. *Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton*, 536 U.S. 150, 165-67 (2002). "U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights." *In re Rule 45 Subpoenas Issued to Google LLC and LinkedIn Corp. dated July 23, 2020* ("**In re Rule 45**"), 337 F.R.D. 639, 649 (N.D. Cal. 2020) (citing *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* ("**USAID I**"), 570 U.S. 205 (2013)). "While under some circumstances non-citizens within a U.S. territory possess certain constitutional rights, 'it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution.'" *Id.* (citing *USAID I*, 570 U.S. 205); *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 (N.D. Cal. 2022) (citing *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* ("**USAID II**"), 591 U.S. 430, 433 (2020)) (same proposition). Thus, if Doe "is a U.S. citizen or if he is a non-citizen within U.S. territory, then he may properly

invoke the First Amendment; otherwise, he may not." *In re Rule 45*, 337 F.R.D. at 649.

District courts in this Circuit apply the "real evidentiary basis" standard articulated in *Highfields* to protect First Amendment rights. *Highfields Capital Mgmt., L.P.*, 385 F. Supp. 2d at 975-76; *e.g., Art of Living Found. v. Does 1-10*, No. 10-cv-05022-LHK, 2011 WL 5444622, at *7 (N.D. Cal. Nov. 9, 2011).

Where First Amendment rights are not implicated, such as where the anonymous speaker is a foreign citizen, district courts in this Circuit have declined to apply the *Highfields* real evidentiary basis standard, and instead, have applied different standards in analyzing whether to quash a subpoena. The court in *Zuru* considered the plausibility of the claims, *Zuru, Inc.*, 614 F. Supp. 3d at 708 ("The Court won't require Zuru to satisfy *Highfields's* 'real evidentiary basis' standard. Zuru has done enough to show that its defamation claim is plausible."), while the courts in *Takada*, *Takagi*, *Team Co.*, and *hey, inc.*, required a Section 1782 applicant to "describe the legal and factual bases for a contemplated foreign legal proceeding, and to explain how the discovery the applicant seeks will aid prosecution of that proceeding", *In re Takada*, Case No. 22-mc-80221-VKD, 2023 WL 1442844, at *6 (N.D. Cal. Feb. 1, 2023); *Takagi v. Twitter, Inc.*, Case No. 22-mc-80240-VKD, 2023 WL 1442893, at *6 (N.D. Cal. Feb. 1, 2023); *In re Team Co.*, Case No. 22-mc-80183-

VKD, 2023 WL 1442886, at *5 (N.D. Cal. Feb. 1, 2023); *hey, inc. v. Twitter, Inc.*, Case No. 22-mc-80034-DMR, 2023 WL 3874022, at *5 (N.D. Cal. June 6, 2023).

Therefore, determining whether the speaker has First Amendment rights is crucial in determining whether the *Highfields* real evidentiary basis standard will apply or whether the standards articulated in *Zuru* or *Takada* will apply.

Whether the First Amendment protects speech is usually straightforward – if the speaker is either a U.S. citizen or a non-citizen speaking within U.S. territory, then the protections apply, and if the speaker is a non-citizen speaking outside U.S. territory, then protections do not apply.

This case presents a unique twist to this question. Although Doe appears to be a non-citizen because there is no evidence that Doe is a U.S. citizen, and although his defamatory speech was published outside of the United States – which would normally not entitle Doe to First Amendment protections – there is evidence that Doe might have been within U.S. territory while discovery in this case was being conducted to determine the identity of Doe. ER-116, ER-111, ER-113.

Doe argued that he "is a U.S. resident currently living in the U.S." ER-56. Although the District Court considered that argument, it should have completely disregarded that argument because it is unsupported by any evidence. ER-9. On the other hand, the District Court might have considered Doe's argument because Doe is purportedly representing himself *pro se*.

The District Court should have disregarded Doe's argument, because there is a strong suspicion that Doe's motion to quash was ghostwritten by a lawyer. ER-41-54. Ghost-writing occurs when an attorney drafts pleadings or court filings on behalf of a *pro se* litigant who, in turn, signs them *pro se*. *Flynn v. Love*, 3:19-CV-00239-MMD-CLB, 2023 WL 2561158, at *4 (D. Nevada Mar. 16, 2023). Ghost-writing is an inappropriate practice and attorneys who engage in the practice are subject to sanction under Rule 11 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 11; *Walker v. Pacific Maritime Assoc*., Case No. C07-3100 BZ, 2008 WL 1734757, at *2 (N.D. Cal. Apr. 14, 2008). If the District Court considered that argument because Doe was purportedly representing himself *pro se*, then the District Court should not have given the leniency ordinarily afforded to *pro se* litigants, but instead, should have held Doe to the standards applicable to members of the bar, because the motion to quash was likely ghost-written by someone with legal training. *Flynn*, 2023 WL 2561158, at *5 (Ghost-writing party is cautioned by the court that any future ghost-written filings will be summarily stricken); *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1222-23 (D. Haw. 2010) (court found that striking was too drastic a remedy, but court did not liberally construe the pleadings as it normally would for a *pro se* party).

The only evidence concerning the location of Doe was submitted by Google that Doe used IP addresses in Korea prior to January 25, 2024 and IP addresses in

the United States from January 25, 2024 until July 16, 2024. ER-116. Doe was given an opportunity to provide evidence in the form of testimony at the court-ordered evidentiary hearing on November 20, 2024, but Doe failed to appear at that evidentiary hearing. ER-74, ER-13. Therefore, there is no evidence submitted by Doe concerning his residence or citizenship.

The unrefuted evidence shows that the YouTube Video was published on January 3, 2024, when Doe was in Korea. ER-110-11, ER-113, ER-116.

Therefore, whether Doe is protected by the First Amendment turns on the question of whether the non-citizen Doe's speech published in a foreign country is protected by the First Amendment, if Doe might be in the United States after he published that speech sometime during the pendency of this case in the District Court.

Although Kim has not found any cases directly addressing this question, all cases that have discussed whether the First Amendment protects the speech of a foreign speaker have focused their analysis on *where the speech* at issue was published, not on whether the anonymous speaker was coincidentally in the United States at the time that discovery was being conducted to determine his identity. *In re Rule 45*, 337 F.R.D. at 649 ("Does was legally present within the U.S. at the time he sent the emails at issue"); *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 287 (5th Cir. 2024) ("[A]ll plaintiffs have First Amendment rights, insofar as they are speaking in the United States. We have never held that because of their lack of

citizenship, non-Americans have no rights under the First Amendment when they speak in the United States"); *DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 283 (D.C. Cir. 1989) (affirming district court's determination "that the interests in free speech and freedom of association of foreign nationals acting outside the borders, jurisdiction, and control of the United States do not fall within the interests protected by the First Amendment.").

Supreme Court precedent and recent Supreme Court dicta also support the proposition that the First Amendment does not protect activities by foreign citizens occurring abroad. "[F]oreign organizations operating abroad have no First Amendment rights". *USAID II*, 591 U.S. at 436. Furthermore, the Supreme Court in *TikTok Inc.* recognized in dicta that "[t]o the extent that ByteDance Ltd.'s [a foreign corporation's] asserted expressive activity occurs abroad, that activity is not protected by the First Amendment." *TikTok Inc. v. Garland*, 604 U.S. ---, 145 S. Ct. 57, 66 n.2, 220 L. Ed. 2d 319 (2025).

Similarly in this case, Doe's publishing of the defamatory video in Korea is an expressive activity occurring abroad that should not be afforded First Amendment protections, even though Doe might have been present in the United States at the time that the Section 1782 discovery in the District Court was being conducted.

Allowing First Amendment rights to foreign speech by foreign nationals who are coincidentally in the United States at the time that their identity is being sought

16

is contrary to *USAID II*, *TikTok Inc.*, and Supreme Court precedent that First Amendment protections are to be afforded only to "a class of person who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Drummond Co. v. Collingsworth*, Case No. 13-mc-80169-JST (JCS), Case No. 13-mc-80171-JST (JCS), 2013 WL 6074157, at *16 (N.D. Cal. Nov. 18, 2013) (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)); *USAID II*, 591 U.S. at 436; *TikTok Inc.*, 145 S. Ct. at 66 n.2. Finding otherwise would allow non-citizen foreign speakers to simply travel to the United States after they learn that their identity is being sought through Section 1782 discovery in order to receive First Amendment protections to which they would otherwise not be entitled to.

Kim has not found any Federal case that has held that foreign speech of a foreign national is protected if the foreign national is in the United States. To the contrary, as explained above, all cases that address this issue conclude that a person in Doe's position is not protected by the First Amendment.

The District Court erred by determining that Doe is protected by the First Amendment because Doe was posting from an IP address in the United States starting from January 25, 2024, and by considering Doe's allegation, unsupported by any evidence, that he "is a U.S. resident currently living in the U.S." ER-9-10, ER-56. The evidence does not show that Doe was "posting" from an IP address in

17

the United States. The evidence only shows that Doe was accessing his account using an IP address in the United States. ER-116. Regardless, whether Doe was posting, publishing, or accessing his account from the United States after January 25, 2024 is irrelevant in this case, because as explained above, non-citizen Doe's foreign speech, which is the YouTube Video at issue, was published on January 3, 2024 in Korea, and is therefore not protected by the First Amendment.

Therefore, the *Highfields* balancing test which protects First Amendment rights should not have been applied to Doe's subject foreign speech.

### 2. Google's motion to quash should be denied because, under the standards articulated in *Zuru* or *Takada*, Kim has made a sufficient showing.

Where First Amendment rights are not implicated, such as where the anonymous speaker is a foreign citizen, district courts in this Circuit have declined to apply the *Highfields* real evidentiary basis standard, and instead, have considered the plausibility of the claims, *Zuru, Inc.*, 614 F. Supp. 3d at 708 ("The Court won't require Zuru to satisfy *Highfields's* 'real evidentiary basis' standard. Zuru has done enough to show that its defamation claim is plausible."), or have required the Section 1782 applicants to "describe the legal and factual bases for a contemplated foreign legal proceeding, and to explain how the discovery the applicant seeks will aid prosecution of that proceeding", *In re Takada*, 2023 WL 1442844, at *6; *Takagi*,

2023 WL 1442893, at *6; *In re Team Co., Ltd.*, 2023 WL 1442886, at *5; *hey, inc.*, 2023 WL 3874022, at *5.

As explained in detail in Section VI.B.1 *infra*, Kim has made out a prima facie case, and under either *Zuru* or *Takada*, Kim has made a sufficient showing for this Court to allow the discovery sought and to deny Google's motion to quash.

**B.    The District Court abused its discretion by determining that Kim did not satisfy the *Highfields* test.**

The District Court's decision to grant Google's motion to quash the Section 1782 subpoena is reviewed for abuse of discretion. *Khrapunov v. Prosyankin*, 931 F.3d 922, 924 (9th Cir. 2019).

"Courts have adopted a variety of standards to benchmark whether an anonymous speaker's identity should be revealed." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175 (9th Cir. 2011). In choosing the proper standard "by which to balance the rights of anonymous speakers," the Ninth Circuit has suggested that courts focus on "the nature of the speech." *Id.* "A more rigorous standard may be applicable where the speech at issue is political, religious, or literary, while commercial speech 'should be afforded less protection.'" *Id.* The specific circumstances surrounding the speech serve to give context to the balancing exercise. *Id.*

In this case, the YouTube Video insults Kim and falsely accuses Kim of sexually assaulting a sister within his church, drinking alcohol which is a sin under the teachings of Life Word Mission, and committing a secret fraud, which fall into the category of commercial speech. ER-151, ER-133-35; *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at *4 (anonymous criticism was commercial speech). Accordingly, if Doe's foreign speech is protected by the First Amendment, the test in *Highfields* would be applicable under these circumstances. *Highfields Capital Mgmt. L.P.*, 385 F. Supp. 2d at 975-76.

The District Court determined that the First Amendment protects Doe's foreign speech, and applied the *Highfields* balancing test. ER-10.

Under the *Highfields* balancing test, the moving party is required to "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm" to the moving party, and to do so, "must adduce *competent evidence* – and the evidence the moving party adduces must address all of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts." *Highfields Capital Mgmt. L.P.*, 385 F. Supp. 2d at 975 (alterations in original). "If [the first component of the test is] reached, the second component of the test requires the court to assess and compare the magnitude of harms that would be caused to the

competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Id.* at 976.

The District Court abused its discretion in determining that Kim did not meet the *Highfields* test. Kim will first address each component of the *Highfields* test, and then address the District Court's determination.

### 1. Kim satisfied the first component of the *Highfields* test.

Under the *Highfields* test, Kim is required to adduce competent evidence that addresses all of the inferences of fact that Kim would need to prove in order to prevail under at least one of the causes of action he asserts. *Highfields Capital Mgmt. L.P.*, 385 F. Supp. 2d at 975.

Kim has adduced competent evidence in the form of declarations, signed under penalty of perjury. *Silverman v. Mendiburu*, 785 F. App'x 460, 460 (9th Cir. 2019) (a "declaration, signed under penalty of perjury" constitutes "competent evidence" sufficient even to withstand summary judgment); *Wirt v. Twitter, Inc.*, Case No. 21-mc-80166-JSC, 2021 WL 5919846, at *2 (N.D. Cal. Dec. 15, 2021) (attestations contained in declaration are competent evidence).

Kim has filed the Civil Case against Doe in the Republic of Korea for defaming and insulting Kim under Articles 750 and 751 of the Civil Act of the Republic of Korea. ER-152, ER-138.

21

Kim will only address the reputational tort, i.e., the defamation cause of action, because insults are protected speech under the First Amendment. Article 750 of the Civil Act of the Republic of Korea concerns torts generally and Article 751 of the Civil Act of the Republic of Korea is a special provision that allows for defamation or other mental distress to be compensated monetarily. ER-84. The elements of a tort under Article 750 of the Civil Act of the Republic of Korea are: (a) an unlawful act; (b) done intentionally or negligently; (c) an injury; and (d) causation between the unlawful act and the injury. ER-139, ER-84, ER-90, ER-76, ER-78. Kim satisfies all of the elements of defamation under Korean law.

**(a)     The YouTube Video is an unlawful act.**

Under the laws of the Republic of Korea, where a statement in public by a person lowers another person's social objective reputation, the statement is an unlawful act, id. est., a defamation, if (i) the statement is making a factual assertion, or (ii) the statement is an opinion or a comment based upon underlying facts. ER-84, ER-91-94, ER-77, ER-79.

Doe makes false factual assertions in the YouTube Video that Kim sexually assaulted a sister, drank alcohol (which is a sin under the teachings of Life Word Mission), and committed a secret fraud. ER-151, ER-126-27, ER-133-34. Religious leaders committing sexual crimes is a serious problem around the world, and being accused of such a sexual crime is a serious accusation against a religious leader in

the Republic of Korea. ER-85. Accusations that a pastor committed a sin and committed fraud are also serious accusations that would harm a pastor's reputation within the religious community. *Id.* Therefore, these assertions are false factual assertions that lower Kim's social objective reputation, especially Kim's social and religious reputation as a pastor. ER-84-85. Therefore, the YouTube Video is an unlawful act and Kim satisfies the first element of a reputational tort under the laws of the Republic of Korea. ER-85.

Additionally, because the YouTube Video falsely accuses Kim of committing the crimes of sexually assaulting a sister and committing fraud, the defamation in this case is part of the four categories traditionally recognized in the United States as constituting defamation *per se*. *E.g., DeMartini v. DeMartini*, 833 Fed. Appx. 128, 132 (9th Cir. 2020) (accusation of criminal conduct fall within the grounds for defamation *per se*).

Therefore, the YouTube Video is an actionable, false, and defamatory statement that is an unlawful act under the laws of the Republic of Korea and the Applicant satisfies the first element of a reputational tort under the laws of the Republic of Korea. Furthermore, because Kim is being falsely accused of committing crimes, the defamation in this case is defamation *per se* under the laws of the United States, for which no First Amendment protection should be afforded.

//

**(b)     Doe's unlawful act was done intentionally.**

Under the laws of the Republic of Korea, intent or negligence is rarely an issue in cases involving online reputational torts, because the relevant intent or negligence is whether the speaker intentionally or negligently published the unlawful statement. ER-85. Under the laws of the Republic of Korea, the intent element is satisfied by simple recognition by the speaker of the fact that the statement is false and that the statement will lower a person's social reputation. *Id.* Because the YouTube Video would not have been published by Doe without intent to publish, the fact that the YouTube Video was published is sufficient proof of intent, and the falsity of the statements contained in the YouTube Video is proof that the purpose of Doe is to lower Kim's social objective reputation. *Id.*, ER-151.

Therefore, because Doe intentionally published the YouTube Video, and because the statements contained in the YouTube Video are false, Kim satisfies the second element of a reputational tort under the laws of the Republic of Korea. ER-86.

**(c)     Kim has suffered an injury.**

Damage in the form of impairment of reputation, personal humiliation, and mental anguish are injuries for purposes of a reputational tort under the laws of the Republic of Korea as provided in Article 751. ER-138, ER-86. Under the laws of the Republic of Korea, even where a monetary value of the damages is not proven, a

Judge in a civil case in the Republic of Korea will determine the amount of damages considering, comprehensively, factors such as the relationship of the tortfeasor and the victim, motivation of the defamation, the method and period of defamation, the victim's mental distress and damages, and measures that the tortfeasor takes to restore the victim's reputation. ER-86, ER-95-97, ER-77, ER-80.

Kim is a well respected pastor, known for his human rights work, his faith, and for being kind and bright. ER-105-06. The YouTube Video has harmed Kim's good name within the community, and injured Kim both mentally and psychologically; Kim is suffering from immense stress, feels helpless because his name continues to be tarnished with him unable to do anything about it, has been diagnosed with depression, cannot go to crowded places due to humiliation and fear, has flashbacks when delivering sermons at the church, is devastated because believers have stopped their belief in the teachings of the church as a result of the false accusations, reputation has been tarnished within the church community, is suffering from insomnia, and fears that he will need to quit his job because of the accusations. ER-151-52, ER-111-12, ER-106-07.

Kim satisfies the third element of a reputational tort under the laws of the Republic of Korea because his reputation has been impaired, he has experienced personal humiliation, and suffered mental anguish among the various injuries that the YouTube Video caused to him. ER-86.

Under the United States Constitution, for Kim to survive Constitutional muster, he must at least show actual damage. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349-50 (1974). "[A]ctual damage is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 350. "There need be no evidence which assigns an actual dollar value to the injury." *Id.* Therefore, Kim will survive Constitutional muster, because Kim has shown actual damage in the form of at least impairment of reputation, personal humiliation, and mental anguish. ER-151-52, ER-111-12, ER-106-07; *Gertz*, 418 U.S. at 349-50; *see* 1 Rodney A. Smolla, *Law of Defamation* § 7:7 (2d ed. 2021) ("No Supreme Court opinion has ever required special harm in any defamation case. When special harm is mandated in a case it is purely a requirement of state law.").

The lowering of a plaintiff's reputation is allowed as actual damage in the United States as well. For example, the Supreme Court of New Jersey has stated "[o]ther damages include the loss of one's good name inflicted by the defamatory publication to third parties, and the anguish and humiliation that flows from a communication that, history and experience teach, will dimmish one's good name." *W.J.A. v. D.A.*, 43 A.3d 1148, 1159 (N.J. 2012) (citing *Rocci v. Ecole Secondaire Macdonald-Cartier*, 755 A.2d 583 (N.J. 2000) (quoting *Gertz*, 418 U.S. at 350).

26

Therefore, Kim satisfies the third element of a reputational tort under the laws of the Republic of Korea because he has shown injury, and he will survive United States Constitutional muster because he has shown actual damage. ER-86.

### (d) There is causation between the YouTube Video and the injuries suffered by Kim.

Under the laws of the Republic of Korea, generally, in order to impose liability for damages due to an illegal act, there must be a causal relationship between the illegal act and the damage suffered by the plaintiff, and the presence or absence of a causal relationship must be determined by comprehensively considering the likelihood of the occurrence of the result, the nature of the illegal act, and the nature of the interests infringed. ER-86. However, under the laws of the Republic of Korea, in the context of defamation, civil courts in the Republic of Korea do not require any special proof of a causal relationship between the defamatory statement and the injury. ER-87. Nonetheless, Kim's injuries have directly resulted from the YouTube Video as explained in Section VI.B.1. *supra*. ER-87, ER-151-52, ER-111-12, ER-106-07. Therefore, Kim satisfies the fourth element of a reputational tort under the laws of the Republic of Korea. ER-87.

Based upon the foregoing, Kim has satisfied the first component of the *Highfields* test, because Kim will be able to make out a prima facie case for a reputational tort under Articles 750 and 751; Kim has adduced competent evidence; and, the evidence adduced addresses all of the inferences of fact that Kim would

27

need to prove in order to prevail under Articles 750 and 751. ER-87; *Tokyo Univ. of Soc. Welfare*, 2021 WL 4124216, at \*4; *Silverman*, 785 F. App'x at 460; *Wirt*, 2021 WL 5919846, at \*2.

### 2. Kim satisfied the second component of the *Highfields* test.

"If [the first component of the *Highfields* test is] reached, the second component of the test requires the court to assess and compare the magnitude of harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Highfields Capital Mgmt. L.P.*, 385 F. Supp. 2d at 976 (brackets added).

Kim has suffered severe emotional and mental harm, he has been humiliated, he is suffering from insomnia for months, his reputation has been tarnished by the false accusations, and he is on the verge of losing his job, all because of the false defamatory statements contained in the YouTube Video. ER-151-52, ER-111-12, ER-106-07. If Kim is not allowed to conduct discovery to determine the true identity of Doe, Kim will not be able to proceed with his Civil Case. ER-139. Unless Kim is allowed to clear his name through the Civil Case, his reputation will remain tarnished within his church community, and he will continue to suffer emotionally, mentally, and psychologically, will continue to be humiliated, and fears he will need to quit his job as a pastor, taking away Kim's livelihood and destroying Kim's career that he has built over many years. ER-111-12.

The accusations against Kim are not mere opinion or harmless comments, but instead are significant false factual accusations that Kim sexually assaulted a member of his religious group, committed fraud, and committed a religious sin, accusations that significantly injure his reputation as a pastor. Furthermore, the false accusations of sexual assault and fraud traditionally constitute defamation *per se* in the United States. *E.g., DeMartini*, 833 Fed. Appx. at 132 (accusation of criminal conduct fall within the grounds for defamation *per se*). That defamation is a "dignitary tort," *Rocci*, 755 A.2d at 592 (O'Hern, J., dissenting), is not a matter of dispute. *W.J.A.*, 43 A.3d at 1159. On the other hand, Doe will suffer minimal harm by merely being deprived of his anonymity, which Doe has used to spread falsities about Kim and to cause significant damage and harm upon Kim.

Therefore, the magnitude of the harms weigh significantly in favor of Kim.

### 3. The District Court abused its discretion by determining that Kim failed to meet both components of the *Highfields* test.

The District Court determined that Kim failed to meet both components of the *Highfields* balancing test and granted Google's motion to quash Kim's subpoena.

The District Court determined that Kim failed to meet his initial burden, because Kim:

> does not allege a viable claim for defamation or insulting under Korean law because the allegedly defamatory video does not identify [Kim] and [Kim] offers nothing but speculation to support that the allegedly false claims made in the video are, in fact, about [Kim]. Nor does [Kim] offer

29

a plausible rationale for how such indefinite claims could have caused him the alleged harm, much less that the alleged harm was the result of people watching the YouTube videos. The conclusory statements offered by [Kim]'s counsel in Korea stating that [Kim] has made a prima facie case for defamation under Korean law alone cannot satisfy the *Highfields* test.

ER-10.

### (a) The YouTube Video identifies Kim.

First, the District Court erred by determining that Kim "does not allege a viable claim for defamation … under Korean law because the allegedly defamatory video does not identify [Kim] and [Kim] offers nothing but speculation to support that the allegedly false claims made in the video are, in fact, about [Kim]." ER-10. Kim has proffered competent evidence in the form of declarations signed under penalty of perjury. *Silverman*, 785 F. App'x at 460; *Wirt*, 2021 WL 5919846, at *2.

Kim's proffered competent evidence has made out a prima facie case of defamation under the laws of the Republic of Korea as explained in Section VI.B.1. *supra*. Kim has proffered competent evidence that the false allegations of rape, drinking alcohol, and fraud contained in the YouTube Video are being directed at Kim, because Kim is the only person within Life Word Mission that meets the description of the person described by Doe. In the YouTube Video, Doe describes the person that he is talking about as "[the] missionary, is a name most people in Life Word know by heart. He spent many years in missionary work overseas and served as the general pastor in charge in that country", "[he] is back in Korea", "his profile

30

picture in KakaoTalk shows his offspring getting married within the church". ER-152, ER-126-135.

Kim conducted missionary work as a general pastor in Mongolia, and there are only two general pastors returning to Korea from overseas missionary work at Life Word Mission, and among the two general pastors, Kim is the only one whose daughter got married recently. ER-152. Based upon those facts, there is no one else within the church that meets the description of the person described by Doe. Members of Life Word Mission that have seen the video have associated the video with Kim, Kim has understood the video to concern him, and commenters to the video have identified the video to concern Kim. ER-149-52, ER-111-12, ER-106-07.

Neither Google nor Doe have provided any evidence that the defamatory video concerned anyone else. Doe had an opportunity to testify to refute Kim's evidence, but Doe failed to attend the evidentiary hearing and failed to provide any evidence contrary to the competent evidence provided by Kim. ER-75, ER-13. Notwithstanding this unrefuted evidence, the District Court abused its discretion by determining that the defamatory video does not identify Kim and only relies upon speculation. ER-10.

**(b) The harm suffered by Kim is a direct result of the YouTube Video.**

Second, the District Court erred by determining that "[n]or does [Kim] offer a plausible rationale for how such indefinite claims could have caused him the

31

alleged harm, much less that the alleged harm was the result of people watching the YouTube videos." Kim has proffered competent evidence in the form of declarations signed under penalty of perjury. *Silverman*, 785 F. App'x at 460; *Wirt*, 2021 WL 5919846, at *2. As explained in Section VI.B.3.(a) *supra*, the YouTube Video clearly identifies Kim, and as explained in Section VI.B.1. *supra*, the harm suffered by Kim was a direct result of the YouTube Video. Therefore, the District Court abused its discretion by determining that Kim failed to offer a "plausible rationale for how such indefinite claims could have caused him the alleged harm, much less that the alleged harm was the result of people watching the YouTube videos".

### (c) Kim's Korea counsel did not offer conclusory statements.

Third, the District Court erred by determining that "[t]he conclusory statements offered by [Kim]'s counsel in Korea stating that [Kim] has made a prima facie case for defamation under Korean law alone cannot satisfy the *Highfields* test." ER-10. As explained in Section VI.B.1. *supra*, Kim's Korea counsel's declarations under penalty of perjury analyze Korean law and apply the facts to the law to show how Kim has made a prima facie case for defamation under the laws of the Republic of Korea. Therefore, the District Court abused its discretion by determining that Kim's Korea counsel stated a conclusory statement that Kim has made a prima facie case.

//

**(d) The magnitude of harms weighs in favor of Kim.**

The District Court erred in determining that, under the second component of the *Highfields* test, the magnitude of harms weighed in favor of Doe, without explaining how it made that determination. ER-10-11. As explained in Section VI.B.2. *supra*, the magnitude of harms weighs significantly in favor of Kim. Therefore, the District Court abused its discretion by determining that the magnitude of the harms weighs in favor of Doe under the second component of the *Highfields* test.

**C.    The District Court abused its discretion by determining that the Third *Intel* factor favors quashing the subpoena.**

The third *Intel* factor is whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States. *hey, inc.*, 2023 WL 3874022, at *7 (citing *Intel*, 542 U.S. at 265).

The District Court erred by determining that the third *Intel* factor favors quashing the subpoena because "[Kim] seeks to circumvent U.S. policies and Constitutional rights to freely express oneself anonymously while providing inadequate justification for doing so", essentially based upon the First Amendment. ER-11. If the First Amendment does not protect Doe, then the third *Intel* factor will weigh in favor of allowing discovery to Kim, because "[t]he First Amendment

33

doesn't apply to foreign citizens outside U.S. territory, so it doesn't reflect a U.S. policy of protecting free speech around the world." *Zuru, Inc.*, 614 F. Supp. 3d at 707.

Even if the First Amendment might protect Doe, as explained in Section VI.B.1. *supra*, Kim has met the *Highfields* test by making out a prima facie case with competent evidence, and has provided a justification about why the discovery is necessary, which is to conduct discovery to identify Doe so that Kim can proceed with the Civil Case. ER-139. Therefore, the District Court abused its discretion by finding that the third *Intel* factor favors quashing the subpoena.

## VII. CONCLUSION

Based upon the foregoing, the Appellant Ho Chan Kim respectfully requests that this Court reverse the Judgment and Order of the District Court, and remand the case to the District Court with instructions to order Google LLC to provide the discovery requested by the subpoena within 10 days of this Court's decision.

Dated April 12, 2025.

           s/ Carlos M. Taitano
          CARLOS M. TAITANO
          *Attorney for Petitioner - Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-647

I am the attorney or self-represented party.

**This brief contains** | 8,052 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
 [ ] it is a joint brief submitted by separately represented parties.
 [ ] a party or parties are filing a single brief in response to multiple briefs.
 [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated | | .

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Carlos M. Taitano | **Date** | April 12, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**     *Rev. 12/01/22*

35