Case No. 25-647

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

HO CHAN KIM

*Petitioner - Appellant,*

v.

GOOGLE LLC

*Respondent - Appellee.*

---

On Appeal from the United States District Court
for the Northern District of California
Case No. 5:24-mc-80152-NC
Hon. Nathanael M. Cousins, United States Magistrate Judge

---

## APPELLEE GOOGLE LLC'S ANSWERING BRIEF

---

Nicholas O. Kennedy (CA Bar # 280504)
**BAKER & McKENZIE LLP**
1900 North Pearl Street, Suite 1500
Dallas, TX 75201
Telephone: 214 978 3081
Facsimile: 214 978 3099
nicholas.kennedy@bakermckenzie.com

Byron R. Tuyay (CA Bar # 308049)
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Telephone: 310 201 4728
Facsimile: 310 201 4721
byron.tuyay@bakermckenzie.com

*Attorneys for Respondent – Appellee*
*GOOGLE LLC*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Ninth Circuit Rule 26.1, the undersigned certifies that Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of Alphabet Inc. Alphabet Inc. is a publicly traded company; no publicly traded company holds more that 10% of Alphabet Inc.'s stock.

Dated: June 11, 2025             **BAKER & MCKENZIE LLP**

By: */s/ Nicholas O. Kennedy*
    Nicholas O. Kennedy
    Byron R. Tuyay
    Attorneys for Respondent-Appellee
    *GOOGLE LLC*

# **TABLE OF CONTENTS**

**Page**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ………………………i

INTRODUCTION ....................................................................................................1

STATEMENT OF ISSUES....................................................................................2

STATEMENT OF THE CASE AND FACTS.......................................................2

    I.     Google's YouTube Platform Allows Users to Freely Exchange Ideas and Information. ....................................................................................2

    II.    A U.S. Resident Posts an Anonymous Video on YouTube..................3

    III.   Appellant Disagrees with Doe's Speech and Seeks Section 1782 Discovery to Attempt to Uncover Doe's Identity. ..............................4

    IV.   The District Court Grants the *Ex Parte* Application; Doe and Google Move To Quash. ..................................................................................4

    V.    The District Court Quashes the Subpoena Because It Violates Doe's First Amendment Right to Anonymous Speech; Kim Appeals............6

SUMMARY OF ARGUMENT...............................................................................7

STANDARD OF REVIEW ...................................................................................9

ARGUMENT........................................................................................................12

    I.     The First Amendment Protects Doe's Right to Anonymous Speech; the District Court Properly Exercised Its Discretion to Protect That Right. ................................................................................................12

        A.    The Right to Anonymous Online Speech Is A Bedrock of the First Amendment. ....................................................................12

        B.    Doe Has A Constitutional Right to Anonymous Online Speech Because They Are Either A U.S. Citizen or A Resident with Significant and Voluntary Ties to the U.S..............................13

            1.    The Record Supports the District Court's Conclusion that Doe Is Either A U.S. Citizen or Resident; the District Court Did Not Plainly Err. ............................................14

            2.    Doe's Right to Anonymous Speech Is Constitutionally Protected Because Record Evidence Indicates He Could Be A U.S. Citizen. ......................................................16

3.      Doe's Right to Anonymous Speech Is Constitutionally Protected Because Record Evidence Indicates He Is At Least A U.S. Resident. ................................................. 17

(a) ........... Record Evidence Supports the Conclusion that Doe's Speech is Constitutionally Protected Because It Could Have Been Made from the U.S. and Other Related Speech Has Been or Will Be Made From the U.S. ……………………………………………………..17

(b) ........... Doe's Speech Is Constitutionally Protected Even if Made Abroad Because of Doe's Significant Voluntary Connection to the U.S. ................................. 19

(c) .......... Doe's Right to Anonymous Speech Is Constitutionally Protected Because Record Evidence Demonstrates It Was Directed at a U.S. Audience through a U.S.-Based Online Forum. ........................... 21

4.      Kim's Reliance on Distinguishable Cases Lacking Evidence of A U.S. Link by the Anonymous User Does Not Destroy Doe's Constitutional Protection. ............... 24

C.    Section 1782 Subpoenas Are Routinely Quashed As Unduly Burdensome When They Destroy the Constitutional Right to Anonymity. ............................................................................. 26

1.      The Supreme Court's Discretionary Intel Factors Protect the Right to Anonymous Speech. ................................. 26

2.      Section 1782 Applicants Must Meet A High Bar to Overcome First Amendment Protections ..................... 27

D.    The District Court Did Not Abuse Its Discretion by Finding the Subpoena is Unduly Burdensome Due to its Destruction of the Constitutional Right to Anonymous Speech ........................... 29

II.    The District Court Did Not Abuse Its Discretion by Finding the Applicant Failed to Show Competent Evidence of Harm and that the Balance of Harms Favors Quashing the Subpoena. ........................... 31

CONCLUSION ................................................... 33

CERTIFICATE OF COMPLIANCE ........................................ 34

CERTIFICATE OF SERVICE ............................................. 35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdullah v. U.S. Sec. Assocs.*,
   731 F.3d 952 (9th Cir. 2013)............................................................32

*Agency for Int'l Dev. v. All for Open Soc'y Int'l Inc.*,
   591 U.S. 430 (2020)......................................................................13

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013)......................................................................16

*AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*,
   752 F. 447 (9th Cir. 2019)..........................................................8, 10

*American Arab Anti-Discrimination Comm. v. Reno*,
   70 F.3d 1045 (9th Cir. 1995).....................................................13, 17

*Anonymous Online Speakers v. United States Dist. Court (In re
   Anonymous Online Speakers)*,
   661 F.3d 1168 (9th Cir. 2011)................................................8, 11, 12

*Briseno v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021)........................................................10

*Bullfrog Films, Inc. v. Wick*,
   847 F.2d. 502 (9th Cir. 1988)..........................................................7

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
   308 F.3d 1075 (9th Cir. 2002)........................................................10

*Gispanski v. Brazelton*,
   761 F. 735 (9th Cir. 2019)............................................................11

*In re Gliner*,
   133 F.4th 927 (9th Cir. 2025).................................................*passim*

*Highfields Capital Mgmt., L.P. v. Doe*,
   365 F. Supp. 2d 969 (N.D. Cal. 2005).......................................*passim*

*Ibrahim v. Dep't of Homeland Sec.*,
669 F.3d 983 (9th Cir. 2012) ................................................................... *passim*

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) .................................................................................. *passim*

*Khrapunov v. Prosyankin*,
931 F.3d 922 (9th Cir. 2019) ............................................................................. 10

*Lufthansa Technik AG v. Thales Avionics, Inc.*,
No. 20-56293, 2021 U.S. App. LEXIS 36660 (9th Cir. Dec. 13,
2021) ....................................................................................................... 10, 11

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) ...................................................................................... 8, 12

*Miles v. Kirkland's Stores Inc.*,
89 F.4th 1217 (9th Cir. 2024) ............................................................................ 11

*Music Grp. Macao Commer. Offshore Ltd. v. Does*,
82 F. Supp. 39 979, 982 (N.D. Cal. 2015) .......................................................... 8

*Music Grp. Macao Commer. Offshore Ltd. v. Does*,
82 F. Supp. 3d 979 (N.D. Cal. 2015) ................................................................. 12

*Nikon Corp. v. ASML U.S., Inc. (In re Pursuant to 28 U.S.C. § 1782 to
take discovery of ASML U.C., Inc.)*,
70 F. 476 (9th Cir. 2017) ................................................................................... 10

*Nikon Corp. v. Globalfoundries U.S. Inc.*,
760 F. 350 (9th Cir. 2017) .......................................................................... 15, 33

*In re PGS Home Co.*,
No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520 (N.D. Cal.
Nov. 19, 2019) ....................................................................................... *passim*

*In re Planning & Dev. of Educ., Inc.*,
No. 21-mc-80242-JCS, 2022 U.S. Dist. LEXIS 14563 (N.D. Cal.
Jan. 26, 2022) ............................................................................................ 26, 29

*Reid v. Covert*,
345 U.S. 1 (1957) ...................................................................................... 13, 16

*In re Saki Takada,*
No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159 (N.D. Cal. Feb. 1, 2023)................................................................................25

*Stanley v. Georgia,*
394 U.S. 557 (1969).......................................................................21

*In re Takada,*
No. 22-cv-80221, 2023 WL 1442844.............................................25

*Thunder Studios, Inc. v. Kazal,*
12 F.4th 736 (9th Cir. 2021)..........................................................21

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.,*
No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385 (N.D. Cal. Sept. 9, 2021) ...............................................................23, 26

*United States v. Ochoa-Oregel,*
904 F.3d 682 (9th Cir. 2018).........................................................13

*United States v. Verdugo-Urquidez,*
494 U.S. 259 ..................................................................................19

*In re Yuichiro Yasuda,*
No. 19-mc-80156-TSH, 2020 U.S. Dist. LEXIS 26242 (N.D. Cal. Feb. 14, 2020)................................................................................28

*Zuru, Inc. v. Glassdoor, Inc.,*
614 F. Supp 3d 697 (N.D. Cal. 2022).............................................25

## Statutes

28 U.S.C. § 1782................................................................*passim*

## Other Authorities

*About YouTube,* https://about.youtube/ ...................................3

First Amendment .....................................................................*passim*

Bill of Rights ...............................................................................8

*How Google Uses Location Information,*
https://policies.google.com/technologies/location-data?hl=en-GB ....................3

Immigrant Classes of Admission, Department of Homeland Security,
    Office of Homeland Security Statistics, available at
    http://ohss.dhs.gov/topics/immigration/lawful-permanent-
    residents/immigrant-classes-admission (last accessed May 26,
    2025) ........................................................................................................ 14

*Rule 45* ........................................................................................................... 16

U.S. Constitution ........................................................................................... 18

# INTRODUCTION

"[T]he ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation.'" *In re Gliner*, 133 F.4th 927, 933 (9th Cir. 2025) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995)). The subpoena at issue here challenges that fundamental right.

Appellant is a foreign pastor who seeks to unmask an anonymous YouTube user ("Doe"). ER-149. Appellant admits that he targets Doe because of Doe's anonymous speech. ER-150. Appellant admits he disagrees with the content of Doe's speech. ER-150. And Appellant admits he seeks to punish Doe for their anonymous speech. ER-152.

The First Amendment does not tolerate such retaliation. Instead, it requires a Section 1782 subpoena proponent like Appellant here to provide competent evidence of harm suffered as a result of the speech at issue. *See Highfields Capital Mgmt., L.P. v. Doe*, 365 F. Supp. 2d 969, 75-76 (N.D. Cal. 2005). The District Court correctly concluded that Appellant did not meet his burden. Doe thus has a constitutional right to remain anonymous. The District Court therefore properly quashed the subpoena seeking to unmask Doe. This Court should affirm.

1

## STATEMENT OF ISSUES

1.      Whether the District Court abused its discretion when it applied the factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) to quash a subpoena issued to Google under 28 U.S.C. § 1782 seeking to uncover the identity of an anonymous user of Google services because the subpoena imposes an "undue burden" and "circumvent[s] U.S. policies and Constitutional rights to freely express oneself anonymously."   ER-8, ER-11.

2.      Whether the District Court abused its discretion when it quashed a subpoena issued to Google under 28 U.S.C. § 1782 seeking to uncover the identity of an anonymous user of Google services because the Applicant "has not shown competent evidence to support his civil claims in Korea and the balance of harms weighs against [Appellant] and in favor of the anonymous speaker."  ER-11; *see Highfields Capital Mgmt., L.P.*, 365 F. Supp. 2d at 975-76.

## STATEMENT OF THE CASE AND FACTS

### I.   Google's YouTube Platform Allows Users to Freely Exchange Ideas and Information.

Appellee operates YouTube, a video sharing service with more than 2 billion users.  ER-159.  YouTube allows users to create anonymous accounts with pseudonymous usernames.  ER-5, ER-138, ER-150, ER-159.  Anonymity

promotes free speech by removing the fear of repercussion.  SER-92.  This furthers

YouTube's mission to "give everyone a voice and show them the world."[1]

## II.    A U.S. Resident Posts an Anonymous Video on YouTube.

This case relates to one of the billions of anonymous videos posted on

YouTube.  In early 2024, a YouTube channel called "A Fisherman Catching a

Fish" posted a video criticizing an unidentified pastor of Life Word Mission, a

religious organization with churches in more than 82 countries including the U.S.

ER-58, ER-59, ER-111.  Doe, the anonymous user who posted this video,

identifies themselves as a "U.S. resident currently living in the U.S."  ER-56.

Internet Protocol access log data confirm the same - Doe logged into the Google

account associated with the YouTube channel using only U.S. IP addresses since

January 25, 2024.  ER-116.[2]

---

[1] *About YouTube*, https://about.youtube/ (last accessed June 11, 2025).

[2] An IP address is a number that is assigned to a computer or device by an Internet Service Provider.  IP addresses are used to make the connection between devices and websites.  IP addresses are roughly based on geographic location. While not determinative of a users' physical location, apps, services or websites may be able to infer information about users' general area from the IP addresses associated with an account or device. *See How Google Uses Location Information*, https://policies.google.com/technologies/location-data?hl=en-GB (last accessed May 26, 2025).

**III.    Appellant Disagrees with Doe's Speech and Seeks Section 1782 Discovery to Attempt to Uncover Doe's Identity.**

Appellant Ho Chan Kim lives in the Republic of Korea.  ER-149.  He is one of many pastors at the Life Word Mission church.  ER-149; ER-152; ER 58-59.  Kim was unhappy with the message Doe posted.  ER-158.  So, Kim sought to unmask Doe and punish Doe for their speech through a Korean civil lawsuit. ER-160.

Kim claims he could not uncover Doe's identity alone.  ER-152.  He thus enlisted the District Court in his unmasking quest.  On June 20, 2024, Kim filed an *ex parte* application under 28 U.S.C. § 1782 seeking to serve a subpoena on Google for Doe's identity.  ER-158-160; ER-10.

Kim claimed that the anonymous video harmed his reputation and caused him significant physical and mental harm.  ER-159.  But the video does not name Kim.  ER-9; ER-152; ER-159.  It does not contain any descriptions of him either. *Id.*

**IV.    The District Court Grants the *Ex Parte* Application; Doe and Google Move To Quash.**

Kim's *ex parte* application was granted in part on July 2, 2024, while preserving all rights for Google to move to quash or modify the subpoena once served.  ER-124.  Appellant served Google with a subpoena seeking identifying information for Doe on July 9.  ER-44.  Google served objections to the subpoena on July 23, raising First Amendment concerns among others.  SER-93.  Google's

4

counsel and Kim's counsel conferred on July 31.  SER-93.  They did not reach an agreement.  SER-93.

Google moved to quash on September 9, 2024.  ER-6; SER-85.  Google emphasized Doe's ties to the U.S., including as demonstrated in IP access log data showing consistent U.S. logins since January 2024.  ER-116.  Google thus explained that the unmasking Kim sought would violate Doe's First Amendment right to anonymous speech.  SER-96.  Moreover, Google emphasized that Kim failed to substantiate his foreign civil claims with sufficient evidence to overcome Doe's First Amendment right to free and anonymous expression.  SER-98-101. *See Highfields*, 365 F. Supp. 2d at 975–76.

Doe moved to quash the subpoena a few weeks later.  ER-56–61.  Doe similarly sought to protect their identity.  ER-56.  Doe confirmed that they are a "U.S. resident currently living in the U.S."  ER-56.  They also referenced several threats received from followers of the Life Word Mission.  ER-58.  Doe thus claimed that Google's compliance with the subpoena would not only violate their First Amendment right to anonymity, but would also put at risk their own safety. ER-56.

Kim responded, and Google replied.  SER-54; ER-6.  Eventually, the parties consented to magistrate jurisdiction.  ER-70; ER-72.  A hearing was held on November 20, 2024.  ER-13.

5

## V. The District Court Quashes the Subpoena Because It Violates Doe's First Amendment Right to Anonymous Speech; Kim Appeals.

The District Court granted Google's Motion to Quash on December 31, 2024.  ER-5.  In exercising its discretion, the District Court concluded that two of the Supreme Court's *Intel* factors independently supported quashing the subpoena.  ER-8-11; *see Intel*, 542 U.S. at 256.

First, the District Court concluded that the third *Intel* factor supported quashing the subpoena.  Specifically, the District Court concluded that "Applicant seeks to circumvent U.S. policies and Constitutional rights to freely express oneself anonymously while providing inadequate justification for doing so."  ER-11.

Second, the District Court concluded that the fourth *Intel* factor also supported quashing the subpoena.  ER-10.  Specifically, the District Court concluded that the First Amendment protects Doe due to Doe's U.S. ties, evidenced by (a) Doe's statement that they lawfully resided in the U.S. and (b) the IP access log data.  ER-9, ER-116.  The District Court also found the fact that Doe may have accessed their YouTube account from Korea prior to January 25, 2024, "does not waive the protections of the First Amendment."  ER-10.

The District Court then concluded that Kim failed to meet the burden required by *Highfields* to destroy Doe's First Amendment protection.  To begin, "[t]he conclusory statements offered by Applicant's counsel in Korea stating that

6

Applicant has made a prima facie case for defamation under Korean law alone cannot satisfy the *Highfields* test." ER-10. Moreover, the harm resulting from unmasking Doe – who had already received threats from Life Word Mission followers – outweighed the harm caused to Kim by quashing the Subpoena. ER-11; ER-58.

The District Court thus exercised its discretion to quash the subpoena. ER-11. Kim appealed on January 30, 2025. ER-175. This Court should affirm.

## SUMMARY OF ARGUMENT

The First Amendment does not dissolve at our borders. Nor does it discriminate based on citizenship. Instead, U.S. citizens enjoy free speech anywhere in the world. *Bullfrog Films, Inc. v. Wick*, 847 F.2d. 502, 514 (9th Cir. 1988) (discussing First Amendment protection of speech disseminated abroad). So too do non-citizen U.S. residents who have established "significant voluntary connections" to the U.S. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 997 (9th Cir. 2012) (First Amendment protected speech of non-citizen abroad who was a student in the U.S.).

The District Court got this right when it concluded that "in totality . . . the First Amendment should apply to anonymous speakers in this situation." ER-10. The evidence demonstrates that Doe is at least a U.S. resident—and perhaps a citizen. ER-56. Doe has consistently resided in the U.S. *Id.* Doe has also

consistently used Google's services from the U.S.  ER-56; ER-119.  And Doe

intended their message to reach a U.S. audience.  ER-57, ER-59-60.  Doe's speech

is thus protected, even if it was made abroad (although there is no record evidence

to prove it was made abroad in any event).

The right to anonymous online speech is fundamental to the First

Amendment.  *McIntyre*, 514 U.S. at 357 ("[Anonymity] thus "exemplifies the

purpose behind the Bill of Rights, and of the First Amendment in particular.").

Courts thus closely scrutinize requests to unmask anonymous online speakers.  *See*

*Anonymous Online Speakers v. United States Dist. Court (In re Anonymous Online*

*Speakers)*, 661 F.3d 1168, 1173 (9th Cir. 2011) (discussing how a higher standard

should apply when a subpoena seeks the identity of an anonymous speaker).  When

that unmasking request is a Section 1782 subpoena like that at issue here, the

Supreme Court affords the trial court broad discretion to quash it.  *AIS GmbH*

*Aachen Innovative Sols. v. Thoratec LLC*, 752 F. App'x 447, 449 (9th Cir. 2019)

("District courts have 'broad discretion' whether, and to what extent, to allow

discovery under 28 U.S.C. § 1782.") (citing *Intel Corp v. Advanced Micro Devices,*

*Inc.*, 542 U.S. 241, 124 S. Ct. 2466 (2004)).  This is because an unmasking request

that violates the First Amendment right to anonymity is overly burdensome and

would "unduly infract the Doe defendants' First Amendment right to speak

anonymously."  *Music Grp. Macao Commer. Offshore Ltd. v. Does*, 82 F. Supp. 39

8

979, 982 (N.D. Cal. 2015) (quashing subpoena when the harm from violating Doe's First Amendment right to remain anonymous outweighed the need for discovery.).

Section 1782 applicants like Kim must therefore meet a high bar to disregard the First Amendment and out an anonymous online speaker. Specifically, they must present competent evidence of real harm. *Highfields*, 385 F. Supp 2d at 975–76. And even if the applicant presents evidence of such harm, it must outweigh the harm of violating the anonymous online speaker's free speech.

The District Court did not abuse its discretion when it concluded Kim failed to meet this test. ER-10 ("Applicant does not allege a viable claim for defamation or insulting under Korean law because the alleged defamatory video does not identify them and Applicant offers nothing but speculation to support that the allegedly false claims made in the video are, in fact, about Applicant. Nor does Applicant offer a plausible rationale for how such indefinite claims could have caused him the alleged harm ….").

The District Court thus acted well within its discretion in quashing the subpoena at issue. ER-10-11. That should be affirmed.

## STANDARD OF REVIEW

"Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C.

9

§ 1782." *Khrapunov v. Prosyankin*, 931 F.3d 922, 926 (9th Cir. 2019). This is because district courts "are in the best position to review the details of a § 1782 request." *Four Pillars Enters. Co. v. Avery Dennison Corp.,* 308 F.3d 1075, 1078 (9th Cir. 2002); *see also, e.g.*, *Lufthansa Technik AG v. Thales Avionics, Inc*., No. 20-56293, 2021 U.S. App. LEXIS 36660, at *2 (9th Cir. Dec. 13, 2021) (affirming lower court's decision to deny Section 1782 discovery as overly burdensome). A district court's decision to quash or limit the scope of a subpoena issued under 28 U.S.C. § 1782 is thus reviewed only for abuse of discretion. *Khrapunov*, 931 F.3d at 933.

A district court "abuses its discretion" only when it fails to apply the correct legal standard or bases its decision on "unreasonable findings of fact." *Briseno v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021). And because district courts have "broad discretion" in applying the *Intel* factors to proposed discovery, these factors should not be reargued on appeal. *AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*, 752 F. App'x 447, 449 (9th Cir. 2019). Thus, even if an alternative weighing of the *Intel* factors is reasonable, this Court must affirm the District Court's decision to quash the subpoena unless it was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the record." *Nikon Corp. v. ASML U.S., Inc. (In re Pursuant to 28 U.S.C. § 1782 to take discovery of ASML U.C., Inc.)*, 70 F. App'x 476, 477 (9th Cir. 2017).

Factual findings underlying the District Court's conclusions, like the finding that Doe was either a U.S. citizen or non-citizen resident alien (ER-10), are reviewed for clear error. *Lufthansa*, 2021 U.S. App. LEXIS 36660, at *2. This highly deferential standard requires a "definite and firm conviction that a mistake has been committed" to overturn the District Court's conclusion. *Gispanski v. Brazelton*, 761 F. App'x 735, 736 (9th Cir. 2019) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). The Ninth Circuit "review[s] the district court's findings of fact under the clearly erroneous standard." *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1221 (9th Cir. 2024). The clear error standard is "highly deferential and is only met when the reviewing court is left with a definite and firm conviction that a mistake has been committed." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1177 (9th Cir. 2011).

Because the District Court's assessment of the *Intel* factors was well-supported by the record, this Court should affirm the order granting Google's Motion to Quash. ER-4-11.

## ARGUMENT

I. **The First Amendment Protects Doe's Right to Anonymous Speech; the District Court Properly Exercised Its Discretion to Protect That Right.**

A. **The Right to Anonymous Online Speech Is A Bedrock of the First Amendment.**

"It is well established that the First Amendment protects the right to anonymous speech." *McIntyre*, 514 U.S.at 334, 342; *see also* ER-8 (District Court recognizing that "[i]t is now well settled that an author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment.") (internal citations omitted). Anonymity ensures that individuals can voice their beliefs, and protects "unpopular opinions from retaliation." *McIntyre*, 514 U.S. at 357. Anonymous online speech is equally protected and equally important—there is "no basis for qualifying the level of First Amendment scrutiny that should be applied[.]" *In re Anonymous Online Speakers*, 661 F.3d at 1173 (citing *Reno v. ACLU*, 521 U.S. 844, 870 (1997)). This ensures that individuals can engage in online discourse without undue interference or fear of exposure. *Id*. Of course, once an anonymous speaker is "unmasked," the user permanently loses their anonymity, and all future speech is unprotected. *See Music Grp. Macao Commer. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 986 (N.D. Cal. 2015) ("[T]he court is more concerned that breaching the defendant's anonymity

12

for this single remark would unduly chill speech and deter other critics from exercising their First Amendment rights.").

**B.  Doe Has A Constitutional Right to Anonymous Online Speech Because They Are Either A U.S. Citizen or A Resident with Significant and Voluntary Ties to the U.S.**

The fundamental protections of our Constitution sweep broadly.  They apply to U.S. citizens at home.  *Agency for Int'l Dev. v. All for Open Soc'y Int'l Inc.,* 591 U.S. 430, 433 (2020).  They apply to U.S. citizens abroad.  *Reid v. Covert*, 345 U.S. 1, 6 (1957) ("[T]he Bill of Rights…should not be stripped away just because he happens to be in another land.").  Non-citizens in the U.S. are also protected.  *American Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1064 (9th Cir. 1995) ("None of these provisions acknowledge[] any distinction between citizens and resident aliens.  They extend their inalienable privileges to all 'persons'" . . .) (quoting *Bridges v. Wixon*, 326 U.S. 135 (1945)).[3]  And non-citizens abroad have Constitutional rights too.  *Ibrahim*, 669 F.3d at 983 (concluding that First Amendment protected non-citizen resident's speech made abroad).  Doe's speech is protected under this broad standard.

---

[3] Even U.S. residents who entered unlawfully have been afforded constitutional rights. *E.g.*, *United States v. Ochoa-Oregel*, 904 F.3d 682, 686 (9th Cir. 2018) (finding Due Process Clause to apply even to aliens who entered unlawfully).;

### 1. The Record Supports the District Court's Conclusion that Doe Is Either A U.S. Citizen or Resident; the District Court Did Not Plainly Err.

There is no basis to overturn the District Court's factual finding that there is "evidence to support the proposition that the anonymous speaker was a U.S. citizen or resident alien." ER-10 . While the District Court did not specify which category it believed Doe to fall into, ample record evidence supports either conclusion. As explained below, the First Amendment protects Doe either way. *See* Secs. I.B.1, I.B.2, I.B.3, *infra*.

Evidence in the record supports the conclusion that Doe could be a U.S. citizen. Google does not request citizenship information from its users. SER-93, SER-100. Google thus has no way to determine with certainty the citizenship of Doe, or anyone else. SER-100. Doe, for their part, describes themselves in their *pro se* Motion to Quash as "a U.S. resident currently living in the U.S.," "a legal U.S. resident," and "a lawful U.S. resident." ER-56-57. These are not formal terms of immigration law. And, it is reasonable to assume that when used by a non-lawyer they could include several categories of legal status that each include the right to reside in the U.S.—including citizenship, lawful permanent residency, or a variety of different visa types.[4]

---

[4] *See, e.g.*, Immigrant Classes of Admission, Department of Homeland Security, Office of Homeland Security Statistics, available at

Moreover, as recognized by the District Court, "IP access log data from Google establishes that since January 25, 2024, [Doe] has been posting from an IP address in the United States." ER-10; *see also* ER-116 (Zucarello Decl. ¶ 4). In reaching this factual conclusion, the District Court recognized that "use of an IP address itself does not prove citizenship." ER-10. The District Court further noted Kim's claim that the video at issue was first posted on January 3, 2024, when Google's IP access logs showed Doe was logging in from Korea. *Id.* The District Court recognized that Kim failed to provide evidence that would rule out U.S. citizenship or residency. *Id.* Doe, for their part, emphasized their U.S. residency while referring to family in Korea. ER-56. This suggests that they could have been visiting family abroad when the post was made - just one of many reasonable explanations for Doe logging into their Google account from Korea that is consistent with U.S. citizenship or residency.

The result of this weighing of competing evidence to reach a factual conclusion—Doe is a U.S. citizen or resident—should not be disturbed on appeal. *See Nikon Corp. v. Globalfoundries U.S. Inc.*, 760 F. App'x 350, 351 (9th Cir. 2017) ("Even if an alternative weighing of the factors were reasonable, the district

---

http://ohss.dhs.gov/topics/immigration/lawful-permanent-residents/immigrant-classes-admission (last accessed May 26, 2025).

court's decision was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.") (internal citation omitted).

### 2. Doe's Right to Anonymous Speech Is Constitutionally Protected Because Record Evidence Indicates He Could Be A U.S. Citizen.

It is fundamental that U.S. citizens are protected by the Constitution anywhere in the world. *Reid*, 345 U.S. at 6. In other words, a U.S. citizen has a constitutional right to anonymous speech no matter where that speech is made. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013); *see In re Rule 45 Subpoenas Issued to Google LLC & Linkedin Corp. dated July 23, 2020*, 337 F.R.D. 639, 649 (N.D. Cal. 2020) (quashing Subpoenas issued to Google and LinkedIn that uncovered anonymous Doe's identity in violation of his First Amendment rights).

As noted above, evidence in the record supports the conclusion that Doe could be a U.S. citizen. *See* Sec. I.B., *supra*. This includes IP access logs showing consistent U.S. access, and Doe's own statements that he lawfully resides in the U.S. ER-56-57. If Doe is a U.S. citizen, the timing and location of the post at issue is entirely irrelevant. Based on the finding that Doe could be a U.S. citizen, the First Amendment applies anywhere, at any time, to Doe's speech. The inquiry need go no further. The District Court's conclusion that "the First Amendment applies to Kim's application" (ER-10) can be affirmed on this basis alone.

### 3. Doe's Right to Anonymous Speech Is Constitutionally Protected Because Record Evidence Indicates He Is At Least A U.S. Resident.

Doe's speech would still be protected even if they are not a U.S. citizen because the District Court correctly concluded that Doe is, at minimum, a U.S. resident. ER-10. Moreover, even non-citizens possess Constitutional protections extraterritorially so long as they have established "significant voluntary connections" to the U.S. *See e.g., Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 997 (9th Cir. 2012) (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271). Thus, Doe's speech is constitutionally protected, even if it was made abroad, and even if Doe is not a U.S. citizen.

### (a) Record Evidence Supports the Conclusion that Doe's Speech is Constitutionally Protected Because It Could Have Been Made from the U.S. and Other Related Speech Has Been or Will Be Made From the U.S.

If Doe made the speech in the U.S., it is beyond dispute that it is protected by the First Amendment. *See American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1064 (9th Cir. 1995) (discussing how Constitutional protections within the United States do not distinguish between citizens or residents).

There is nothing in the record to prove that the speech was made while Doe was abroad. Alternatively, record evidence suggests it could have been made from the U.S. The only evidence in the record shows that (1) after January 25, 2024 Doe "*only* accessed the account using an IP address in the United States" and (2)

17

"prior to" that date, Doe "logged into the relevant YouTube account from Korea."

ER-116 (emphasis added). Notably, the evidence does not state that Doe

*exclusively* logged in from Korea prior to January 25, 2024. It thus does not rule

out U.S. logins in that time frame, or prior, in addition to those from Korea that it

identifies. As the District Court noted, Kim failed to provide any evidence to

counter the IP access logs. ER-10. Thus, the District Court correctly concluded

that "the alleged fact that the Doe user previously (before January 25, 2024)

accessed from Korea does not waive the protections of the First Amendment."

ER-10.

Moreover, once Doe is unmasked their right to remain anonymous is lost

forever. This is true regardless of where the original speech leading to the request

to unmask Doe was made. It is undisputed that Doe resides in the U.S., and has

logged into the account at issue exclusively from the U.S. at least since January 25,

2024. ER-56-58; ER-116. Evidence also suggests that Doe stands by their prior

speech and intends to continue speaking out in the future. ER-59-60 (Doe

emphasizing their mission to bring awareness to these issues they find concerning,

including in the U.S.). Doe also emphasizes that they expected their speech to be

protected, and relied on this important constitutional right in making it. ER-57-58

("Movant is a lawful U.S. resident with full protection of the U.S. Constitution.

The First Amendment provides substantial protection to anonymous speakers, as

anonymity can be essential to protect individuals from retaliation on intimidation based on their expressed views."). If Doe is unmasked based on this prior speech, at a time when they indisputably reside in the U.S., the constitutional right to remain anonymous would be lost forever. A U.S. resident should not lose a constitutional right and be silenced indefinitely in the U.S. simply because they previously spoke on the same issue while abroad.

### (b) *Doe's Speech Is Constitutionally Protected Even if Made Abroad Because of Doe's Significant Voluntary Connection to the U.S.*

A U.S. resident does not forfeit constitutional protections when they speak abroad. *Ibrahim v. Dep't of Homeland Security*, 669 F.3d 983, 997 (9th Cir. 2012). Instead, a U.S. resident's speech abroad is protected so long as they establish "significant voluntary connections" with the U.S. *Id. See e.g., United States v. Verdugo-Urquidez*, 494 U.S. 259, 263 ("[A]liens receive such protections [extraterritorially] when they have come within the territory of, and have developed substantial connections with, this country."). This extraterritorial free speech protection for U.S. residents turns on (a) the speaker's legal status within the U.S., (b) the speaker's time spent within the U.S. and (c) the likelihood the speaker was temporarily outside the U.S. and intended to return. *Id.*

This Court's decision in *Ibrahim* is instructive. There, the Court recognized that Ibrahim, a non-citizen graduate student studying within the United States, had

19

established "significant voluntary connections" with the U.S. prior to her temporary departure to Malaysia, where she made the relevant speech. *Ibrahim*, 669 F.3d at 996. The Ninth Circuit noted Ibrahim's intention to return to the U.S. shortly afterwards, thus not intending to "sever her established connection to the United States." *Id.* (citing *Verdugo*, 494 U.S. at 271). Therefore, the Ninth Circuit concluded that Ibrahim's brief departure did not destroy her First Amendment rights simply because the relevant speech happened to occur while she was temporarily outside of the United States. *Id.* at 997.

The uncontroverted evidence demonstrates that Doe has similarly established "significant voluntary connections" with the U.S. Evidence shows that Doe is a U.S. resident who returned to the U.S. only a few days after posting the relevant YouTube video. ER-10; ER-116. Doe has also continued to reside here since January 25, 2024, which includes the entire duration of these proceedings. ER-116. Moreover, Doe stated that they intended that their videos reach a U.S. audience because "Word Life Mission is sprawling into the U.S." ER-60.

Additionally, even though the video was initially posted on January 3, 2024, while Doe may have been in Korea temporarily, many viewers watched the video well after Doe's return to the U.S. ER-150. Doe even noted that they have received many "threatening comments" since returning to the U.S. ER-58. And Kim's own *ex parte* application referenced views of the video on May 17, 2024,

20

long after Doe had re-entered the United States. ER-150. On this record, the

District Court found that the date of the posting of the video was unclear,

characterizing it as being uploaded either January 3, 2024 or May 17, 2024. ER-9,

ER-10. Either way, the District Court found the date of posting irrelevant, as it

concluded that Doe established substantial connections with the U.S. regardless.

ER-9-10. There is no basis to overturn this factual finding.

> ### (c)   *Doe's Right to Anonymous Speech Is Constitutionally Protected Because Record Evidence Demonstrates It Was Directed at a U.S. Audience through a U.S.-Based Online Forum.*

Doe's potential citizenship and certain residency entitle him to First

Amendment protection. But Doe's speech is protected for an additional reason—it

was directed at the U.S. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is

now well established that the Constitution protects the right to receive information

and ideas. This right to receive information and ideas, regardless of their social

worth, is fundamental to our free society.").

The Court's conclusion in *Thunder Studios* is instructive here. There, the

court determined that the First Amendment protected the relevant speech, despite

the fact that the speakers were never present within the U.S. *See Thunder Studios,

Inc. v. Kazal*, 12 F.4th 736, 743 (9th Cir. 2021) (holding that the First Amendment

was implicated because the defendants' speech was "directed at and received by

California residents"). The Court observed that, "the First Amendment protects

21

speech for the sake of both the speaker and the recipient." *Id.* Because the speech

targeted California residents, who in turn received the content at issue, the court

held that the First Amendment applied. *Id.*

*Gliner* is also instructive. There, the Court recognized that unmasking an

anonymous user may chill public discourse. *Gliner*, 133 F.4th at 934. But there,

unlike here, the Court rejected the claim because the anonymous user's speech did

not target a U.S. audience. Conversely, Doe's target operates extensively in the

U.S., and his speech was specifically intended for a U.S. audience. ER-57; ER- 59.

Indeed, Doe specifically explained their intent to reach a U.S. audience because

"Word Life Mission is sprawling into the U.S." and "it is imperative that open

dialogue exists to have critical discussions about the organization," even though

"Word Life Mission is not transparent about its operations in its English-language

publications." ER-60.

Moreover, this situation is part of a broader trend, where a U.S. audience is

targeted by an anonymous user whose citizenship cannot be verified. The First

Amendment should apply broadly to these cases to protect the free exchange of

ideas in this evolving online forum. Platforms like Google cannot effectively

determine a user's citizenship. SER-99. While IP data demonstrates that Doe may

be a U.S. citizen—and is at least a U.S. resident—there is no way to prove this

definitively. Indeed, the District Court recognized that the "use of an IP address

itself does not prove citizenship." ER-10. Moreover, modern technology that masks the true location of a digital user, such as VPN services, makes it increasingly difficult for free information platforms such as Google to determine a user's citizenship.

But this difficulty should not diminish free speech. And Google should not be forced to guess which of its users are protected by this fundamental right. Because of the inherent uncertainty, it is better policy to be over-inclusive and apply the First Amendment to all anonymous online users. This avoids the risk that a user loses First Amendment rights to which they are entitled simply because of an information void. The harm from destroying a fundamental constitutional right vastly outweighs the potential harm of extending those rights to someone who otherwise would not receive their benefit.

The best way to achieve this goal is by treating every Section 1782 request to unmask an anonymous user equally and applying the *Highfields* test uniformly. While not necessary to affirm in this case, establishing such a rule would ensure critical constitutional rights are protected and provide much needed guidance to lower courts grappling with a growing number of 1782 matters. *Compare Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385, at *9 (N.D. Cal. Sept. 9, 2021) (applying *Highfields* evidentiary standard to quash Section 1782 applicant's subpoena to unmask anonymous user)

23

*with Hey, Inc.*, 2023 U.S. Dis. LEXIS 98590, at *8-*9 ("In *Tokyo University*, the court wrongly assumed without analysis that the speech at issue was entitled to First Amendment protection.").

> **4.** **Kim's Reliance on Distinguishable Cases Lacking Evidence of A U.S. Link by the Anonymous User Does Not Destroy Doe's Constitutional Protection.**

Kim's reliance on cases lacking any evidence of a U.S. link to the anonymous user at issue there does not advance his case. (AOB 18-19) (citing *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp 3d 697, 708 (N.D. Cal. 2022) and *In re Takada*, No. 22-cv-80221, 2023 WL 1442844, at *6). In fact, they prove the point—Doe's U.S. links support their constitutional rights.

To begin, this case is unlike *Gliner*. 133 F.4th, 927 (9th Cir. 2025). There, this Court reversed a court's refusal to grant a Section 1782 unmasking application. *Id*. at 935. It did so because there was "no evidence [to] suggest[] that the Operator or the Author [was] a U.S. citizen or is present in the United States." *Id*. at 934. That evidence is abundant here. As the District Court recognized, it includes IP access logs and Doe's own statements.[5] ER-9, 10. Because Doe is present in the U.S. and has significant U.S. links, *Gliner* is inapposite.

---

[5] Doe's reliance on *Tik Tok* is similarly inapposite. *See* (AOB 16-17) (citing *TikTok v. Garland*, 604 U.S. __ (2025), Slip Op. No. 24-656 and 24-657 (Jan. 17, 2025)). That case did not address Section 1782 or relate to an anonymous user. *See* Slip Op. at 1. Instead, it considered whether a foreign company had a right to assert the First Amendment to avoid the shutdown of its domestic social network. Slip

Zuru and Takada are distinguishable for the same reason. (AOB 18-19)

(citing Zuru, Inc., 614 F. Supp. 3d 697, 708 (N.D. Cal. 2022) and In re Takada,

No. 22-cv-80221, 2023 WL 1442844, at *6 (N.D. Cal. Feb. 1, 2023)). Again, as

recognized by the District Court, there was no evidence in either case that the

anonymous user could be a U.S. citizen or resident. ER-10 ("This case is distinct

from Takada and hey, Inc. cases where there was no evidence to support the

proposition that the anonymous speaker was a U.S. citizen or resident alien."); see

also In re Saki Takada, No. 22-mc-80221-VKD, 2023 U.S. Dist. LEXIS 17159, at

*8 (N.D. Cal. Feb. 1, 2023) ("Here, as in Zuru, there is no reason to believe that

the anonymous poster is a U.S. citizen[.]"). Put simply, this case is different

because it is undisputed that Doe has U.S. links. Zuru and Takada, like Gliner, are

irrelevant.

---

Op. at 7. The Supreme Court assumed, without deciding, that the foreign company
would be protected by the First Amendment but rejected the challenge anyway
because the law at issue served compelling government interests. Slip Op. at 13.
The quote relied upon by Kim is dicta, in a footnote, that played no part in the
decision. Slip Op. at 8., n 2.

C.  **Section 1782 Subpoenas Are Routinely Quashed As Unduly Burdensome When They Destroy the Constitutional Right to Anonymity.**

1.  *The Supreme Court's Discretionary Intel Factors Protect the Right to Anonymous Speech.*

While Section 1782 was enacted to streamline the process for discovery in aid of foreign proceedings, its reach is limited. The Supreme Court has confirmed that courts retain discretion to deny discovery even when Section 1782's requirements are met. *See Intel Corp.,* 542 U.S. at 260–61, 264. When considering such a request, courts weigh (1) whether the respondent is a participant in the foreign proceedings; (2) the receptiveness of the discovery of the foreign court; (3) whether the subpoena is circumventing foreign discovery restrictions; and (4) the overall burden imposed by the subpoena. *Intel*, 542 U.S. at 264–65.

The First Amendment implications carry substantial weight in these factors. Specifically, "the third discretionary factor may also weigh against granting an application that conceals an attempt to contravene the First Amendment's purpose without justification." *In re Planning & Dev. Of Educ., Inc.*, No. 21-mc-80242-JCS, 2022 U.S. Dist. LEXIS14563, at *10 (N.D. Cal. Jan. 26, 2022). The burden placed on free speech also supports quashing a subpoena under the fourth *Intel* factor. *In re Tokyo Univ.,* No. 21-mc-80102-DMR, 2021 U.S. Dist. LEXIS 171385, at *8 (N.D. Cal. Sept. 9, 2021).

**2.** **Section 1782 Applicants Must Meet A High Bar to Overcome First Amendment Protections.**

While this Court has not yet addressed the issue, the Northern District of California applies the test articulated in *Highfields Capital Mgmt., L.P. v. Doe* to assess and balance the risk that a 1782 subpoena may cast aside First Amendment Constitutional protections. *See* 385 F. Supp. at 980. This test recognizes the risk of retaliation if an anonymous speaker is identified. *Id.* It thus requires the applicant to show that they are seeking this information to pursue legitimate foreign litigation, rather than simply to identify a speaker with whom they disagree. Instead, if an applicant seeks discovery for use in a foreign civil proceeding under Section 1782, and the requested discovery would unmask an anonymous online speaker, then the court must consider the nature of the applicant's claims abroad and the potential chilling effect the subpoena would have on First Amendment rights under the fourth *Intel* factor – the overall burden of imposed by the subpoena. *See In re PGS Home Co.*, No. 19-mc-80139-JCS, 2019 U.S. Dist. LEXIS 204520, at *7 (N.D. Cal. Nov. 19, 2019) (citations omitted).

To meet this goal, *Highfields* requires that (a) Section 1782 applicants present competent evidence of real harm, and (b) the court balances the harm of denying the request with the harm of violating free speech. *Highfields*, 385 F. Supp. 2d at 975–76. If a Section 1782 Subpoena fails either prong of the

27

*Highfields* test, the fourth *Intel* factor supports denying the request due to the burdensome free speech violation.

The first prong requires that applicants do more than "plead and pray" and allegation and speculation are insufficient. *Highfields,* 385 F. Supp. 2d at 975; *In re Yuichiro Yasuda*, No. 19-mc-80156-TSH, 2020 U.S. Dist. LEXIS 26242, at *17 (N.D. Cal. Feb. 14, 2020) ("[I]n order to unmask an unmask an anonymous speaker, a litigant must 'persuade[] the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff.'") (citing *Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015)).  Rather, they must present competent evidence that the alleged speech caused actual harm rendering viable a foreign defamation claim.  *Id*.  Vague speculations and conclusory allegations do not suffice.  *Id.*

The second prong balances the harms from (a) denying the discovery request against (b) infringing upon the user's right to remain anonymous.  *See e.g., PGS,* 2019 U.S. Dist. LEXIS 204520, at *13 ("If a plaintiff makes this showing, the court must then 'assess and compare the magnitude of harms that would be caused' to the plaintiff's and defendant's competing interests[.]") (citing *Highfields*, 385 F. Supp. 2d at 975-76).

The District Court correctly concluded that the Third and Fourth *Intel* factors supported quashing the subpoena to protect Doe's First Amendment right to anonymous speech.  ER-10-11.  That was not an abuse of discretion.

**D.  The District Court Did Not Abuse Its Discretion by Finding the Subpoena is Unduly Burdensome Due to its Destruction of the Constitutional Right to Anonymous Speech.**

The District Court properly exercised its broad discretion to determine both the third and the fourth *Intel* factors to protect Doe's First Amendment right to anonymity.  ER-11.  Because Judge Cousins's findings were well-supported by the record, this Court should affirm the District Court's discretionary decision under the *Intel* factors.

First, the District Court properly concluded that the third *Intel* factor "favors quashing the subpoena because [Kim] seeks to circumvent U.S. policies and Constitutional rights to freely express oneself anonymously while providing inadequate justification for doing so."  ER-11 (citing *In re Planning & Dev. of Educ., Inc.*, No. 21-mc-80242-JCS, 2022 U.S. Dist. LEXIS 14563, at n.10 (N.D. Cal. Jan. 26, 2022).  Although the court in *Planning* found no First Amendment protections applied, the court noted that in cases with valid First Amendment concerns, the third *Intel* factor may also weigh against the application.  *Planning*, 2022 U.S. Dist. LEXIS 14563, at n.10.  The court continued that, "[e]ven where the speakers appear to be 'foreign citizens outside U.S. territory,' . . . the principles

underlying the First Amendment may counsel a court against exercising its discretion to aid in punishing speech." *Id*. (quoting *Agency for Int'l Dev. v. All for Open Soc'y Int'l Inc.,* 591 U.S. 430, 433 (2020)). So too here. Because unmasking Doe would destroy his right to anonymity, this subpoena improperly circumvents the First Amendment. The District Court was well within its discretion to quash it.

Second, the District Court also properly exercised its discretion to find that the intrusion on speech was unduly burdensome under the fourth *Intel* factor. Several district courts have found First Amendment concerns to be "unduly intrusive or burdensome." For instance, in *PGS*, the court discussed the burden of chilling free speech by unmasking the anonymous speaker, noting, "these are views in which other members of the public may well be interested – and that defendant has a right to express anonymously." *PGS Home Co.,* 2019 U.S. Dist. LEXIS 204520, at *17. Not only does Doe's speech express views in which other members of the public may be interested, but Doe faces retaliation and threats as a result of their speech. ER-56. Thus, the District Court properly exercised its discretion to rely on the fourth *Intel* factor to quash the subpoena.

II.     **The District Court Did Not Abuse Its Discretion by Finding the Applicant Failed to Show Competent Evidence of Harm and that the Balance of Harms Favors Quashing the Subpoena.**

The District Court did not abuse its discretion by concluding that Kim failed to satisfy the *Highfields* test.  The record supports the District Court's conclusion that "[Kim] [di]d not allege a viable claim for defamation or insulting under Korean law because the alleged video does not identify them and Applicant offers nothing but speculation[.]"  ER-11.  It also supports the District Court's conclusion that [Kim] did not show "competent evidence to support his civil claims in Korea and the balance of harms weighs against [Kim] and in favor of the anonymous speaker.  ER-11.

First, the record supports the finding that Applicant failed to provide competent evidence of real harm.  The *Highfields* test requires the Section 1782 Applicant to "persuade the court that there is real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm."  *PGS Home Co.,* 2019 U.S. Dist. LEXIS 204520, at *13.  In support of his defamation claim in Korea, Appellant provided only conclusory statements that the YouTube video was defamatory, relying on the assumption that the video posted on Doe's about the unnamed pastor was about Appellant.  ER-84-85, ER-160.  The District Court relied in particular on the fact that the video did not identify Kim with any particularity noting that the alleged defamatory video "does not identify

[Appellant] and [Appellant] offers nothing but speculation to support that the allegedly false claims made in the video are, in fact, about [Appellant]." ER-10.

The District Court was correct because a video should not be considered defamatory if it does not even identify the target. The District Court further explained that the Appellant did not "offer a plausible rationale for how such indefinite claims could have caused him the alleged harm, much less that the alleged harm was the result of people watching the YouTube videos." ER-10. While Kim may infer that he was the target, the District Court is not required to draw that same inference. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 966 (9th Cir. 2013) ("We cannot say, in light of all the evidence, that the district court's findings of fact were 'illogical,' 'implausible.' or 'without support in inferences that may be drawn from facts in the record.'"). Significant facts in the record support the District Court's conclusion.

Second, the record also supports the finding that free speech concerns outweighed Applicant's need for discovery. Doe has already experienced death threats from supporters of the Life Word Mission church as a result of the video. ER-58. Doe fears physical harm from those members if they are unmasked. ER-57-58. And once Doe is unmasked, their constitutional right to anonymous speech will have been permanently violated. Appellant, on the other hand, claims that he might not be able to pursue a foreign lawsuit to "clear his name" unless Doe is

unmasked.  SER-79; ER-160.  The District Court weighed each of these harms in its well-reasoned opinion.  ER-11.  It concluded that the harm to Doe was greater. ER-11.  Because there is evidence in the record to support the District Court's subjective conclusion, that conclusion should not be disturbed.  *Globalfoundries*, 760 F. App'x at 351 (explaining that the Ninth Circuit must affirm the District Court's balance of factors, "[e]ven if an alternative weighing of the factors were reasonable.").

The District Court properly weighed the evidence in applying the *Highfields* test.  That exercise of discretion should not be disturbed.

## CONCLUSION

This Court should affirm the order granting Google's Motion to Quash because this order was supported by the record and within the lower court's "broad discretion."

Dated:  June 11, 2025

**BAKER & MCKENZIE LLP**

By: */s/ Nicholas O. Kennedy*
    Nicholas O. Kennedy
    Byron R. Tuyay
    Attorneys for Respondent-Appellee
    *GOOGLE LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7), I certify that:

This brief contains 7,473 words, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The Brief's type size and typeface comply with FRA 32(a)(5) and (6).

I certify that this Brief complies with the word limit of Cir. R. 32-1.


Dated: June 11, 2025          **BAKER & McKENZIE LLP**



By: */s/ Nicholas O. Kennedy*
     Nicholas O. Kennedy
     Byron R. Tuyay
     Attorneys for Respondent-Appellee
     *GOOGLE LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 11, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Electronic Filing system.

Participants in the case who are registered users will be served via the Appellate Electronic Filing system.

Dated:  June 11, 2025          **BAKER & McKENZIE LLP**

By: *<u>/s/ Nicholas O. Kennedy</u>*
     Nicholas O. Kennedy
     Byron R. Tuyay
     Attorneys for Respondent-Appellee
     *GOOGLE LLC*